## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

SEATH MICHAEL KISTNER,

      Plaintiff,

v.                                                 Civil Action No. 3:11cv663

NATHANIEL LEE HARRIS, et al.,

      Defendants.

### MEMORANDUM OPINION

Plaintiff Seath Michael Kistner, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed a Complaint pursuant to 42 U.S.C. § 1983.[1]   (Docket No. 1.)   Kistner claims Defendants Nathaniel Lee Harris and Jeffrey E. Owens[2] violated his rights under the Eighth Amendment[3] by using excessive force against him.   Owens has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), with the appropriate *Roseboro* notice.[4]   (Docket No. 19.)   Kistner has responded, and Owens has filed a reply brief.   (Docket Nos. 24, 27.)   The matter is ripe for disposition.   For the reasons that follow, the Court will DENY Owens's Motion to Dismiss.   (Docket No. 19.)

---

[1]   42 U.S.C. § 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

[2]   The Clerk is DIRECTED to change the docket to reflect the full names of Defendants.

[3]   "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   U.S. Const. amend. VIII.

[4]   *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

### I.   Motion to Dismiss Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).   In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.   *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.   This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted).   Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable."   *Id.*   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp.*, 550 U.S. at 556).

2

Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## II.  Factual and Procedural Background

### A.  Kistner's Factual Allegations

Kistner's claims arise from an incident that allegedly occurred on August 9, 2011, during his incarceration in the Special Housing Unit of the Henrico County Jail East.  (Compl. 4.)[5] Defendants Harris and Owens worked as deputies at the Jail.  Kistner alleges the following:

> I went upstairs to cell 7 . . . to address an ongoing situation we (the other inmates) were having with [a] particular inmate . . . [who] would consistently bang on doors, and yell random notions, and was clearly mentally unstable, but the jail officials refused to move him to a pod more suitable to his needs, after almost every inmate in Pod F wrote grievances, and nothing was accomplished.  So I decided to talk with him and he cursed at me, and hollered profane words.  Eventually, he threw urine, and feces at me from under his door. . . .  About 10 minutes went by . . . and Deputy Harris came through and saw the mess.  He assumed I had thrown the urine and feces under the door out of vengeance.  He then asked me to step in the cell, (which I did and complied) and minutes later, Deputy Harris accompannied [sic] with Deputy Owens showed up outside of my cell door, stating "Put your hands through the tray slot your [sic] moving to G pod."  I then stated "I want to talk to a sergeant or leiutenant [sic] before I am moved" simply because I felt wrongfully accused. . . .  Deputy Harris, and Deputy Owens opened my cell door, and proceded [sic] into my cell. . . .  After my cell door was opened, Deputy Harris yanked my arm towards him, with that being said I feel [sic] over Deputy Harris from the force of him pulling me.  Then Deputy Owens pepper[ ] sprayed me (O.C. sprayed) in the face, and I was completely defenseless, and harmless.  After being O.C. sprayed I was yoked up and placed face down on my mat.  I was then punched two times in the temple area on my right side of my head which almost knocked me out unconsciouse [sic].  I was then placed in handcuffs, and punched an additional two more times in the back of my head.  Deputy Harris had fury of the moment, and failed to exercise professional restraint, and inflicted four powerful blows to my head before he contained himself. . . .  I was then brought to

---

[5] Because Kistner has not numbered the pages of his Complaint consecutively, the Court will refer to the pages as numbered by the Court's CM/ECF docketing system.

medical for decontamination.  Sergeant Martin took pictures of my face, which was noticeably swollen, and scratched.  Medical cleared me.  Two days later I had a black eye, and severe pain around the temple area of my head.  Deputy Harris, accompanied with Deputy Owens, acted purely out of malice, [I'm] seeking justice for this sadistic act of cruel punishment.  These deputies are here to help maintain order, as well as protect us, not to inflict malicious beatings to helpless inmates, when there was no need for "ANY" force.

(Compl. 4–6.)[6]   Kistner demands $1,000,000 in damages.

### B.   Procedural History

On October 4, 2011, Kistner filed a Complaint against Owens and Harris.  Both the Supreme Court of the United States and the United States Court of Appeals for the Fourth Circuit have instructed courts to afford *pro se* filings a liberal construction.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994).   However, "judges are not mind readers" and "cannot be expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).   Keeping these principles of construction in mind, it appears that Kistner asserts an excessive force claim against Harris and Owens and potentially a bystander liability claim against Owens based on his alleged failure to intervene when Owens witnessed Harris allegedly using excessive force against Kistner.   (Compl. 4–6.)

On January 20, 2012, Owens filed a Motion to Dismiss.   Owens contends that the Court should dismiss the excessive force claim against him because Kistner's allegations fail to state a claim for which relief can be granted.   In addition, Owens argues that, even taking Kistner's well-pleaded allegations as true, the Court should grant his Motion to Dismiss on the grounds of qualified immunity.   Owens's Motion to Dismiss relates only to his use of pepper spray against

---

[6] The Court has corrected the capitalization in Kistner's submissions.

Kistner. Thus, the Court will address only that aspect of Kistner's Eighth Amendment claim in the Memorandum Opinion.[7]

### III.  Analysis

#### A.  Eighth Amendment Violation

##### 1.  Applicable Law

To state an Eighth Amendment claim, an inmate must demonstrate:   (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).   When an inmate claims that prison officials used excessive force against him or her, the proof required for the objective component is less demanding and that for the subjective component is more demanding. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).   With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1179 (2010); *see id.* at 1178 (observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (*quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992))).   Nevertheless, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 1178-79.

With respect to the subjective component, the inmate must demonstrate "'wantonness in the infliction of pain.'" *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (*quoting Whitley v. Albers*, 475 U.S. 312, 322 (1986)).   Specifically, "[t]he 'core judicial inquiry' . . . [is] not whether

---

[7] Owens does not address any bystander liability claim in his Motion to Dismiss.   Harris has not joined the Motion to Dismiss and has instead filed his own Motion for Summary Judgment (Docket No. 29) and Motion to Dismiss (Docket No. 32), which will be addressed separately.

a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 130 S. Ct. at 1178 (*quoting Hudson*, 503 U.S. at 7). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9 (internal citation omitted).

   In determining whether the measure used by prison officials against an inmate was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," *Hudson*, 503 U.S. at 7, the Supreme Court has directed courts to consider the following factors:  (1) the necessity for the application of force; (2) the relationship between the need for force and the level of force applied; (3) the threat "reasonably perceived by the responsible officials;" (4) "any efforts made to temper the severity of a forceful response;" and, (5) the extent of the injury. *Williams*, 77 F.3d at 762 (*quoting Hudson*, 503 U.S. at 7 (citations omitted)); *cf. Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (noting that the constitutional prohibition of cruel and unusual punishment "was designed to protect those convicted of crimes" and the text of the Eighth Amendment suggests "an intention to limit the power of those entrusted with the criminal-law function of government").  Furthermore, when evaluating the constitutionality of the use of mace against an inmate, the Court should "examine the 'totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used.'" *Williams*, 77 F.3d at 763 (*quoting Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984)); *see Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984), *cert. denied*, 470 U.S. 1085 (1985) (emphasizing that because the Supreme Court has never held that the use of mace constitutes cruel and unusual

6

punishment *per se*, "the appropriateness of the use [of mace] must be determined by the facts and circumstances of the case")).

> ### 2.   Kistner Has Adequately Alleged an Eighth Amendment Violation Against Owens

Taking the well-pleaded factual allegations as true and viewing them in the light most favorable to him, Kistner has sufficiently alleged an excessive force claim under the Eighth Amendment against Owens.   Considering the factual allegations as a whole, Kistner alleges Defendants' actions against him, including Owens spraying him with mace, as an integrated sequence of events.   Kistner points to Harris "yank[ing]" his arm, *not* Owens pepper-spraying him, as the first use of force in response to his failure to comply with their order to put his hands through the tray slot.   (Compl. 5.)   Although a controlled application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate," *Soto*, 744 F.2d at 1262, Kistner alleges that Owens unnecessarily pepper-sprayed him in the face after he was pulled to the ground and "was completely defenseless, and harmless."   (Compl. 5.)   Next, after Kistner was restrained, Harris allegedly punched him twice on the front right side of his head.   (Compl. 5–6.)   Kistner was then handcuffed, and Harris allegedly punched him an additional two times in the back of his head.   (*Id.*)[8]

Thus, Kistner alleges an uninterrupted series of physical acts of violence directed against him in response to his initial refusal to comply with a single order.   (Compl. 4–6.)   Owens moves to dismiss citing inapposite cases because, in those cases, the use of mace occurred in isolation, or in an instance isolated from a secondary event.   According to Kistner, and unlike the cases cited by Owens, Owens did not use the pepper spray as a means to avoid a physical altercation.   *See,*

---

[8] Kistner does not specify in his Complaint who restrained and handcuffed him.   (Compl. 5.)

*e.g., Lewis v. White*, No. 1:07-0348, 2010 WL 2671495, at *3 (S.D. W. Va. June 8, 2010)

(dismissing prisoner's Eighth Amendment complaint on the ground that the officer's application

of pepper spray to the prisoner's back after he twice refused to comply with a direct order did not

constitute excessive force). Rather, Kistner alleges Owens employed the pepper spray as one

among other increasingly harsh methods (used by both officers within eyesight of each other) to

inflict pain upon Kistner. (Compl. 4–6.) Owens also injects new allegations not included in

Kistner's complaint. [9]

Owens's failure to view Kistner's allegations most favorably to Kistner, alongside his

injection of facts not included in Kistner's complaint, contravenes well established standards of

review governing motions to dismiss. Taking only Kistner's allegations as true and viewing them

in Kistner's favor, Kistner sufficiently has alleged facts that suggest Owens maliciously sprayed

Kistner with pepper spray in order to inflict harm upon Kistner, rather than to make him comply

with an order. *See Taylor v. Lang*, No. 12-6069, 2012 WL 2354460, at *2 (4th Cir. June 21, 2012)

(reversing grant of summary judgment where, during the course of an argument, an officer pepper

sprayed an inmate who "was not acting in an aggressive or threatening manner"); *Iko*, 535 F.3d at

239–40 (affirming denial of summary judgment brought under a qualified immunity claim where

the officer continued to use pepper spray against a prisoner "even after [he] attempted to comply

with orders" and "remained docile and passive throughout the cell extraction"). Kistner's factual

allegations in the Complaint sufficiently "produce an inference of liability strong enough to nudge

---

[9] For example, Owens contends that he pepper sprayed Kistner because he was
"confronted with a recalcitrant prisoner, a scuffle when the door was opened, and Kistner going to
the ground." (Def.'s Mot. Dismiss ¶ 3.) Owens suggests Kistner engaged in a "struggle" with
Harris when the deputies entered Kistner's cell. (Def.'s Br. Supp. Mot. Dismiss at 3.) However,
Kistner's allegations, taken as true and viewed in the light most favorable to Kistner, describe him
falling to the ground after being yanked by Harris and being defenseless and harmless.
(Compl. 5.)

the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (*quoting Iqbal*, 566 U.S. at 683).

### B.     Qualified Immunity

#### 1.     Applicable Law

The doctrine of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   Qualified immunity shields government officials performing discretionary functions from liability for civil damages, insofar as their conduct does not violate clearly established rights of which a reasonable person would have known, in order to "avoid excessive disruption of government and permit the resolution of many insubstantial claims." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).   It is an immunity from suit rather than a mere defense to liability. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).   "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986).   It ensures that "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Whether a law enforcement official is entitled to qualified immunity requires a two-part analysis:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.   Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly

9

established" at the time of defendant's alleged misconduct.   Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (internal citations omitted).   While the sequence set forth above is often appropriate, it is not mandatory.   *Id.* at 236.   Thus, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."   *Id.*

In assessing whether the rights allegedly violated were clearly established at the time of the officer's conduct, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:   The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *Anderson*, 483 U.S. at 640.   Even if no prior decision addresses the precise conduct at issue, a right can be deemed clearly established if "its illegality would have been evident to a reasonable officer based on existing caselaw."   *Rogers v. Pendleton*, 249 F.3d 279, 285-86 (4th Cir. 2001).   In making this determination, the Court "may rely upon cases of controlling authority in the jurisdiction in question, or a 'consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'"   *Id.* at 287 (*quoting Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

## 2.   At This Stage of the Litigation, Owens Has Not Shown an Entitlement to Qualified Immunity

The Court must next consider whether the right allegedly violated was clearly established at the time of the prison officials' conduct.   "For a right to be clearly established, it is not necessary for the 'exact conduct at issue' to have been previously held unlawful."   *Merchant v. Bauer*, 677 F.3d 656, 665 (4th Cir. 2010) (*quoting Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir.

1998)); *see Anderson*, 485 U.S. at 640.   Clearly established constitutional rights "include[ ] not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).   "A defendant invoking qualified immunity must do more than mention its existence and demand dismissal of the suit." *Fisher v. Neale*, 2010 WL 3603495, at *3 (E.D. Va. Sept. 8, 2010).   Instead, the defendant must:

> (1) identify the specific right allegedly violated "at the proper level of particularity;" (2) brief, with full supporting authority, why the right was not so clearly established as to put a reasonable official on notice of any legal obligations; and (3) describe with particularity the factual basis supporting the assertion that a reasonable official in the defendant's situation would have believed his conduct was lawful.

*Id.* at *8 (*quoting Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007)) (internal citations omitted); *see also Shabazz v. Va. Dep't of Corr.*, 2012 WL 463562, at *8 (E.D. Va. Feb. 13, 2012).

In asserting an entitlement to qualified immunity, Owens improperly views the pepper spraying incident in isolation and fails to view the well-pleaded factual allegations as true and in the light most favorable to Kistner.   Owens's myopic presentation of facts too narrowly portrays the events at issue, so the Court cannot use that lens to evaluate what would be a clearly established right.   Although ample authority exists upholding the well-established principle that "mace can be constitutionally used in small quantities . . . to control a recalcitrant inmate," determination of whether an official's application of pepper spray exceeds this standard in violation of a prisoner's Eighth Amendment rights turns on consideration of the particular facts and circumstances of the case.   *Williams*, 77 F.3d at 763 (internal quotation marks omitted).

Here, Kistner alleges that Owens's conduct occurred as part of a use of force by two officers acting in circumstances where they likely knew what the other did as they, themselves,

11

acted.  Owens fails to direct the Court to any cases suggesting that the right at issue, when viewed in this context, was not clearly established.  Indeed, the few cases cited by Owens are procedurally and factually distinguishable.[10]  At this point in the proceedings, Owens has failed to demonstrate an entitlement to qualified immunity.

## IV.  Conclusion

For the foregoing reasons, the Court will DENY Owens's Motion to Dismiss. (Docket 19.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date:  8-17-12

---

[10] A majority of the cases cited by Owens involved an officer's use of pepper spray as an isolated response to a prisoner's refusal to comply with an order, not as part of a string of actions directed against a prisoner as Kistner alleges here.  Furthermore, courts resolved many of the cases cited by Owens at the summary judgment stage, evaluating the excessive force claims under a different standard of review than that required for motion to dismiss proceedings.